DAVID RUDDEN, PRO SE
4112 LEGEND DRIVE
ROCKLIN, CA, 95765
drsells@me.com



FILED

OCT 17 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
   DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

2:22 CV 1837 - TLN DB PS

| DAVID RUDDEN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RAYMOND GIOIOSA, an individual,<br><br>and DOES 1 through 6, inclusive;<br><br>　　　　Defendants. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS AND DOES 1 THROUGH 6 INCLUSIVE FOR:**<br><br>1) Violation of the Federal Fair Housing Act;<br>2) Violation of Fair Employment and Housing Act, Calif. Gov. Code §12955, et seq.;<br>3) Violation of Unruh Act, Calif. Civ. Cod §§ 5 51 and 52;<br>4) Violation of 42 U.S.C. § 1981<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

Comes Now Plaintiff David Rudden, a licensed real estate professional, all to the best of his knowledge, information, and belief formed after an investigation reasonable under the circumstances, which facts are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, except for information identified herein based on personal

COMPLAINT

knowledge, hereby allege as follows against the above-named defendant:

## INTRODUCTION AND NATURE OF THE ACTION

1. On July 13, 2022, a Landlord-Tenant relationship commenced between Plaintiff David Rudden who had rented and moved into one of Defendant Raymond Gioiosa's houses in Rocklin, California, as a tenant.

2. The Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq.*, prohibits housing practices that discriminate on the basis of race, color, religion, sex, familial status, national origin, or handicap.

3. Plaintiff David Rudden is an aggrieved person that has suffered severe emotional distress and damages proximate to Defendants' violations of the Fair Housing Act and California Fair Employment and Housing Act. Accordingly, it is an aggrieved person within the meaning of the Fair Housing Act and California Fair Employment and Housing Act.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 in that the claims alleged herein arise under the laws of the United States, the Fair Housing Act, 42 U.S.C. §3601 et seq., This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to plaintiffs' federal law claims such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in the Eastern District of California is proper because the subject property is located in, and events giving rise to plaintiffs' claims occurred in Placer County, California. Further, venue is proper in the Eastern District of California pursuant to 28 U.S.C. §1391(a) in

COMPLAINT

that Defendant Raymond Gioiosa is subject to personal jurisdiction within the Eastern District of California, and the events which give rise to this action occurred within the Eastern District of California. Moreover, the wrongful and tortious conduct alleged herein against Defendants, and each of them, occurred in the County of Placer, State of California.

## THE PARTIES

6. At all times relevant hereto, Plaintiff David Rudden (hereinafter "Plaintiff"), is a competent adult over the age of eighteen years. At all times relevant hereto, Plaintiff was a resident of the State of California, County of Placer.

7. Plaintiff is informed and believes and thereon alleges that Defendant Raymond Gioiosa (hereinafter "Raymond Gioiosa"), was at all times relevant hereto a competent adult over the age of eighteen years, and a resident of the State of California, County of Placer.

8. Defendants DOES 1 through 6, inclusive, whether individual, corporate, associate, or otherwise, are sued under fictitious names because their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by each of those Defendants.

9. Plaintiff is informed and believes, and upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint ventures of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy,

and/or joint venture and each Defendant has ratified and approved the acts of each of the remaining Defendants.

10.  Plaintiff is informed and believes, and upon such information and belief alleges, that at all times mentioned herein, each of the Defendants was the co-tortfeasor of each of the other Defendants in doing the things hereinafter alleged.

11.  Plaintiff is further informed and believes and thereupon alleges that at all times material herein that each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in harming Plaintiff, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12.  Plaintiff is further informed and believes and thereon alleges, unless explicitly stated otherwise, the actions alleged herein to have been undertaken by the Defendants were undertaken by each Defendant individually, were actions that each Defendant caused to occur, were actions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions for which each defendant assisted, participated or otherwise encouraged, and are actions for which each Defendant is liable.

13.  Plaintiff is further informed and believes and thereon alleges that each Defendant aided and abetted the actions of the Defendants set forth below, in that each defendant had knowledge of those actions, provided assistance and benefited from those actions, in whole or in part. Each of the Defendants was the agent of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the

permission and consent of the other Defendants.

14. Plaintiff is further informed and believes and thereon alleges that at all times relevant hereto, Defendants, and each of them, acted in concert and in the furtherance of the interests of each other Defendant. The conduct of each Defendant combined and cooperated with the conduct of each of the remaining Defendants so as to cause herein described incidents and the resulting injuries and damages to Plaintiff.

## STATEMENT OF FACTS

15. On or about July 1, 2022, Plaintiff was solicited by Raymond Gioiosa and was informed that he had a room available for rent at his house in Rocklin, CA, as he had found out that Plaintiff had sold his house in the Bay Area a few months earlier.

16. Defendant Raymond Gioiosa proposed that Plaintiff move in and share his house by renting one of his rooms at his house, and suggested to Plaintiff that he do so until Plaintiff found another home of his own to purchase.

17. Defendant Raymond Gioiosa further informed that he was currently sharing the house with one other tenant.

18. On July 9, 2022, Plaintiff accepted Defendant Raymond Gioiosa's offer to share his house that he had up for rent.

19. On July 13, 2022, Plaintiff had rented and moved into Defendant Raymond Gioiosa's house in Rocklin, California, and paid him the agreed monthly rental amount of $1300. Accordingly, a landlord-tenant relationship was formed between Defendant Raymond Gioiosa and Plaintiff, respectively.

20. Thereafter, on July 13, 2022, after Plaintiff began moving his person belongings into the shared house, in Rocklin, California, Defendant Raymond Gioiosa informed Plaintiff that

COMPLAINT

Plaintiff could only use the restroom located in Defendant Raymond Gioiosa's room, including taking showers and shaving, and that Defendant Raymond Gioiosa will leave his bedroom door unlocked from the inside so that Plaintiff could have access. More specifically, Defendant Raymond Gioiosa informed Plaintiff that he was restricted from using the guest restroom downstairs, and further instructed Plaintiff that he could not use nor take showers in said restroom.

21.  On July 13, 2022, Defendant Raymond Gioiosa informed Plaintiff that he would receive a key to the house when Defendant Raymond Gioiosa had an opportunity to have a key made for him, and until then, Plaintiff would have to access the house through the garage or backdoor. Further, Defendant Raymond Gioiosa provided Plaintiff with the garage code, and further assured him that he would leave the side door from the backyard unlocked, which would provide access to the house through the laundry room.

22.  Plaintiff alleges that Defendant Raymond Gioiosa began to send nude, unsolicited, un-welcome, sexually explicit, and offensive content to Plaintiff on countless occasions, ranging from June of 2022 to early September of 2022, despite Plaintiff repeatedly requesting that Defendant Raymond Gioiosa stop, and their continued periodic arguments. It appeared to Plaintiff that Defendant Raymond Gioiosa gets drunk, and then resumes to sending such sexually oriented content.

23.  Further, Defendant Raymond Gioiosa would voluntarily inform Plaintiff and others of how Defendant Raymond Gioiosa would secretly be making a "sex video" with the various women he brings home at different times for one night stands.

24.  Throughout the July of 2022 through August of 2022, to early September of 2022, countless arguments took place between Defendant Raymond Gioiosa and Plaintiff, at which

COMPLAINT

point, on information and belief, and on that basis, Plaintiff alleges that Defendant Raymond Gioiosa informed others about Plaintiff as: "crazy", "wack-job", having "liver cancer", that "he bleeds all over the house and further informing others that Plaintiff had liver cancer, that " he is delusional", that "he has an alcoholic brain", that "his skin is so thin it bleeds", that "he is spineless", that "he is a guest that exceeded his welcome", and "he is dead to me dead dead dead".

25. Plaintiff alleges that Defendant Raymond Gioiosa was threatening as he was yelling out very loudly: *"You can run but you can't hide"*.

26. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Raymond Gioiosa made threatening gestures and messages through various means, one of which included playing loud music with targeted messages such as: *"Welcome to the Jungle..."*, *"I chase the Devil..."*, and *"You can run but you can't hide"*, it was almost midnight, and the music kept on playing extremely loud.

27. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Raymond Gioiosa's actions are malicious, sinister, oppressive, aggressive, bullying, and done with the intent to annoy and intimidate Plaintiff, as a way of retaliation against Plaintiff for Plaintiff having express and assert his own legal rights.

28. Plaintiff alleges that Defendant Raymond Gioiosa had evaded to provide the house keys to Plaintiff as promised and agreed, and that Defendant Raymond Gioiosa never intended to provide Plaintiff with said keys to the house.

29. On August 3, 2022, when Defendant Raymond Gioiosa had found out that Plaintiff had taken a shower in the "restricted" restroom downstairs, Defendant Raymond Gioiosa screaming at Plaintiff and informing him that if he continued to use the restricted restroom

COMPLAINT

downstairs, he would add a lock to it, and that Plaintiff would have to "pee" and "poop" in the cat litter that belonged the Plaintiff's cats.

30.   Plaintiff did not want to use the restroom inside of Defendant Raymond Gioiosa's bedroom, after Plaintiff had found out about Defendant Raymond Gioiosa making sex tapes in his room among other reasons. Plaintiff had good cause to no longer want to use Defendant Raymond Gioiosa's restroom in his bedroom.

31.   On or about August 7, 2022, Defendant Raymond Gioiosa screamed at Plaintiff about not using the restroom downstairs, the restricted restroom, and that he will need to use the cat litter box.

32.   On or about August 9, 2022, Defendant Raymond Gioiosa made racial and discrmeinatory statements against Plaintiff's ancestry and heritage by saying: "You're a fucking bum you Irish Hawaian wack-job" and "Irish mick" and "you can use your cat litter to take a shit" and "I will be adding a lock to all the doors including my room and the restroom downstairs, let me see you take a shit in your cat litter".

33.   In late August of 2022, Defendant Raymond Gioiosa approached Plaintiff as he was seated, Defendant Raymond Gioiosa was towering over Plaintiff as Defendant Raymond Gioiosa began to rotate a large dildo (sexual material) from his crotch area towards Plaintiff's face, as Plaintiff was helplessly seated and recalled being traumatized by such abuse.

34.   On August 16, 2022, Defendant Raymond Gioiosa continued to make racial slurs against Plaintiff's national origin, and made further racial slurs against Mexicans by calling them "beaners".

35.   On August 17, 2022, Defendant Raymond Gioiosa screamed at Plaintiff by saying: "I will not be accepting rent from you anymore because you are filthy", "You are filthy and

COMPLAINT

dirty", and "that's why you are alone, no one wants you", and "you have fungus all over your skin bud".

36. On September 5, 2022, Plaintiff could not access the house, the garage code had been changed, and the doors all locked, one of the tenants had to let Plaintiff into the house.

37. On September 6, 2022, Plaintiff was informed by Defendant Raymond Gioiosa that he had added locks to all the doors in the house, including Defendant Raymond Gioiosa's room that required Plaintiff to use the restroom inside of it, and that Defendant Raymond Gioiosa attempted to add a lock to the restroom downstairs, the restricted restroom.

38. On September 15, 2022, Plaintiff attempted to pay Defendant Raymond Gioiosa for his agreed monthly rent as he was obligated to do so pursuant to their agreement, however, Defendant Raymond Gioiosa had refused to accept rent by saying that he does not accept rent from "a spineless irish mick", despite Defendant Raymond Gioiosa had accepted rent from July to August.

39. On September 19, 2022, Defendant Raymond Gioiosa had deliberately informed Plaintiff that he does not rent out his house to irish-hawaiians, and that the garage code is not available for Plaintiff.

40. On September 19, 2022, Defendant Raymond Gioiosa informed Plaintiff that should have "added that lock" to the restroom downstairs, preventing Plaintiff from accessing any restrooms whatsoever.

41. On September 20, 2022, Defendant Raymond Gioiosa had deliberately and loudly yelled by saying "I am locking all the doors", Defendant Raymond Gioiosa was unaware that Plaintiff had recently made a duplicate key that provided by one other tenant, as Defendant Raymond Gioiosa failed to uphold his promise to provide him with a key to the house as agreed.

COMPLAINT

42. Defendant Raymond Gioiosa began informing others of false information about Plaintiff being a tenant, claiming that he was just a guest that was supposed to have been in for a weekend as a guest, only to have exceeded his welcome, when in reality, Plaintiff was a tenant that paid his rent to the landlord, Defendant Raymond Gioiosa, after Defendant Raymond Gioiosa had solicited Plaintiff to rent.

43. On at least 33 different instances, ranging from August of 2022 to September of 2022, Defendant Raymond Gioiosa informed Plaintiff that his house is not available for rent, that the restrooms in the house are not available for Plaintiff, that Plaintiff's Irish and Hawaian heritage is not compatible with Defendant Raymond Gioiosa's personal preferences and lifestyle.

44. On September 23, 2022, Defendant Raymond Gioiosa had deliberately continued to not accept money from Plaintiff, and continued to refer to Plaintiff as a "delusional" and "what is he, irish hawaiian, what a loser",

45. On September 24, 2022, Defendant Raymond Gioiosa had deliberately evaded accepting the agreed monthly rental from Plaintiff despite Plaintiff's good faith attempts to uphold his part of the agreement to pay. Plaintiff continued to make such attempts on September 29, 2022, and on October 2, 2022.

46. On October 2, 2022, Plaintiff had realized that he had not been receiving any of his U.S. Mail, on information and belief, and on that basis, alleges that Defendant Raymond Gioiosa had been suppressing and/or stealing Plaintiff's mail, in order for Defendant Raymond Gioiosa to conceal that he is receiving rental income from tenants, and that Plaintiff was in fact a tenant.

47. On October 3, 2022, Defendant Raymond Gioiosa retaliated against Plaintiff after Defendant Raymond Gioiosa had been served with a legal Complaint, and told him to "leave my property ASAP".

## FIRST CAUSE OF ACTION

### (VIOLATION OF THE FEDERAL FAIR HOUSING ACT)

### Against All Defendants

48.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 36 inclusive, of this Complaint, and incorporates them by reference as if fully set forth herein.

49.  The Fair Housing Act ("FHA"), 42 U.S.C. §3601 et seq., prohibits housing practices that discriminate on the basis of race, color, religion, sex, familial status, national origin, or handicap.

    a. To otherwise make unavailable or deny a dwelling because of race, color, or national origin, in violation of 42 U.S.C. §3604(a);

    b. To discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities therewith, because of race, color, or national origin, in violation of 42 U.S.C. §3604(b);

    c. To make, print or publish, or cause to be made, printed or published, any notice, statement or advertisement, with respect to rental of a dwelling, that indicates any preference, limitation, or discrimination, based on race, color, or national origin, or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. §3604(c); and

    d. To coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any of the rights granted by the FHA, in violation of 42 U.S.C. §3617

COMPLAINT

50.     Therefore, plaintiffs are entitled to declaratory and injunctive relief

## SECOND CAUSE OF ACTION

### (VIOLATION OF FAIR EMPLOYMENT AND HOUSING ACT, CALIFORNIA GOVERNMENT CODE §12955 *ET SEQ.*)

### Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 inclusive, of this Complaint, and incorporates them by reference as if fully set forth herein.

52.     Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act, Cal. Gov. Code §12955, et seq. by committing the following discriminatory housing practices:

    a. To make, print or publish, or cause to be made, printed or published any notice, statement or advertisement, with respect to rental of a dwelling, that indicates any preference, limitation, or discrimination, based on race, color, ancestry, or national origin, or an intention to make any such preference, limitation, or discrimination, in violation of Civil Code §12955(c);

    b. To discriminate against any person in the provision of housing accommodations, in violation of the Unruh Civil Rights Act, Civil Code §51, et seq., on the basis of race, color, ancestry, or national origin, or other prohibited basis, in violation of ICivil Code §12955(d);

    c. To aid, abet, incite, compel, or coerce the doing of any of the acts or practices declared unlawful under Civil Code §12955, in violation of Civil Code §12955(g);

    d. To otherwise make unavailable or deny a dwelling based on discrimination because of race, color, ancestry, or national origin, in violation of Civil Code §12955(k)

    e. To discriminate through public or private land use practices, decisions, and authorizations because of race, color, ancestry, or national origin, in violation of Civil Code §12955(i); and

    f. To coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any of the right: granted by the Fair Employment and Housing Act, in violation of Civil Code §12955.7.

53. Therefore, plaintiffs are entitled to declaratory and injunctive relief.

## THIRD CAUSE OF ACTION

### (VIOLATION OF UNRUH ACT, CALIFORNIA CIVIL CODE §§ 51 AND 52, *ET SEQ.*)

**Against All Defendants**

54. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 inclusive, of this Complaint, and incorporates them by reference as if fully set forth herein.

55. Defendants violated the Unruh Civil Rights Act, California Civil Code §51 et seq., by adopting an taking actions and making statements that have the effect of discriminating against persons as a result of their race, color, ancestry or national origin.

56. The conduct of defendants alleged herein constitutes a denial of full and equal access to housing accommodations to persons within the meaning of California Civil Code §51.

COMPLAINT

57. In addition, by virtue of the adoption of the actions and statements made by defendants, intimidation or coercion with the exercise or enjoyment by plaintiffs of rights secured by the Constitution of the United States and of California, as well as the laws of the United States and the State of California, including rights to free speech, privacy, contract, due process and the processes set forth in the California Civil Code and California Code of Civil Procedure as set forth herein.

58. Pursuant to the Unruh Act and Civil Code §52.1(b), plaintiffs are therefore entitled to statutory damages of either $4,000 or $25,000 per violation, and exemplary damages as determined by the trier of fact, against defendant, as well as injunctive and declaratory relief, to which, at least 33 instances of said violations made, entitling Plaintiff to seek an amount of $825,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

1. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violated the laws of the State of California;

2. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

3. Pursuant to Cal. Civ. Code §52, statutory damages of either $4,000 or $25,000 per violation, and exemplary damages for violating the Landlord and Tenant Plaintiffs' rights under the United States and California Constitutions and the federal and state laws as set forth above; to which, at least 33 instances of said violations made, entitling Plaintiff to an amount in excess of $825,000.

COMPLAINT

4. An award of damages, to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

5. An award of damages, in a sum in excess of $2,500,000, and/or to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for his depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, harm to his personal and professional reputations and loss of career fulfillment;

6. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount in excess of $2,500,000, and/or to be determined at trial, plus prejudgment interest;

7. An award of punitive damages;

8. An award of costs that Plaintiff has incurring in this action, as well as Plaintiff's reasonable attorneys' fees when applicable and costs of prosecuting this action to the fullest extent permitted by law;

9. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 17th day of October 2022

Respectfully submitted,

By: _____
DAVID RUDDEN
Pro Se

COMPLAINT